IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Susan J. Oman, ) | C/A No. 0:15-2052-MBS-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 (D.S.C.). The plaintiff, Susan J. Oman, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

### SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the Administrative Law Judge ("ALJ") to consider, in sequence:

(1)     whether the claimant is engaged in substantial gainful activity;

(2)     whether the claimant has a "severe" impairment;

(3)     whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)     whether the claimant can perform her past relevant work; and

(5)     whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[1] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## ADMINISTRATIVE PROCEEDINGS

In May 2012, Oman applied for DIB, alleging disability beginning January 23, 2012. Oman's application was denied initially and upon reconsideration, and she requested a hearing before an

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. § 404.1520(h).



ALJ. A hearing was held on November 13, 2013, at which Oman, who was represented by Jeffery Sabel, Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on January 2, 2014 finding that Oman was not disabled. (Tr. 12-20.)

Oman was born in 1968 and was forty-three years old on January 23, 2012—her alleged disability onset date. (Tr. 19.) She has a high-school education and additional training in ophthalmology. (Tr. 239.) Oman has past relevant work experience as a certified ophthalmic assistant. (Id.) Oman alleged disability due to vasculitis; inflammatory arthritis; severe pain, numbness and tingling in her feet, legs, and hands; diabetes; depression and anxiety; chronic achilles tears in both ankles; chronic peritendinitis in both feet; retrocalcaneal bursitis in both feet; short term memory problems; and cognitive problems from autoimmune medications. (Tr. 238.)

In applying the five-step sequential process, the ALJ found that Oman had not engaged in substantial gainful activity since January 23, 2012—her amended alleged onset date. The ALJ also determined that Oman's diabetes mellitus, inflammatory arthritis, depression, and bilateral foot arthritis were severe impairments. However, the ALJ found that Oman did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ further found that Oman retained the residual functional capacity to

> perform sedentary work as defined in 20 CFR 404.1567(a) except that she can occasionally bend, balance, stoop, crouch, crawl, and kneel; can never climb scaffolds or ladders; can frequently finger; must avoid concentrated exposure to noise, vibration, and hazards; and is limited to simple, routine, and repetitive tasks in an uncrowded setting with no ongoing interaction with the public.

(Tr. 16.) The ALJ found that Oman was unable to perform any past relevant work, but that considering Oman's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Oman could perform.



Therefore, the ALJ found that Oman was not disabled from January 23, 2012 through the date of his decision.

The Appeals Council denied Oman's request for review on March 26, 2015, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-3.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Oman raises the following issues for this judicial review:

I. Whether the ALJ erred in discounting the opinion of the Plaintiff's treating physician, Dr. Niemer.

II. Whether the ALJ erred in not following the provisions of the Social Security Ruling SSR 96-8p.



III.   Whether the ALJ erred in giving significant weight to the state agency physician.

IV.   Whether the ALJ erred in the hypothetical questions submitted to the Vocational Expert (VE) and ignoring the favorable testimony when questioned by the Plaintiff's attorney.

(Pl.'s Br., ECF No. 18.)

## DISCUSSION

### A.   Treating Physician

Oman first argues that the ALJ failed to properly evaluate the opinion from her treating physician, Dr. Gregory W. Niemer. Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(c)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Any other factors that may support or contradict the opinion should also be considered. 20 C.F.R. § 404.1527(c)(6). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Id. (quoting Craig, 76 F.3d at 590).

PJG

Additionally, SSR 96-2p provides that a finding that

> a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, at *5. This Ruling also requires that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id. at *5.

With regard to Dr. Niemer's opinion, the ALJ observed the following:

> Dr. Niemer submitted a medical source statement dated November 2013 in which he indicated that the claimant's impairments have resulted in an inability to ambulate effectively and perform fine and gross movements effectively. (Exhibit 29F). He added that she would experience significant fatigue and malaise and mild fever. In Dr. Niemer's opinion, the claimant's impairments have marked effects on her activities of daily living, ability to maintain social functioning, and ability to complete tasks in a timely manner due to deficiencies in concentration, persistence, and pace. I have accorded little weight to Dr. Niemer's opinions as they are not supported by the weight of the evidence of record and inconsistent with his own treatment notes. Dr. N[ie]mer noted that the claimant had much better pain control on Actemra, but had to temporarily stop because of a fatty liver and approval had been sought for new medications. Even so, the claimant's last examination of record was normal with the exception of boggy synovitis and tender bilateral Achilles tendon. (Exhibit 23F/24). The claimant's podiatrist recommended a custom orthotic to [relieve] pain in her feet. In addition, I have modified the residual functional capacity to limit the claimant's postural activities and further limited her to less than the full range of sedentary work.

(Tr. 18.)

PJG

Oman challenges the ALJ's evaluation of this opinion evidence, arguing that Dr. Niemer's medical records in fact contain findings supporting his opinion. Specifically, Oman points out that the record includes over twenty-four treatment records from Dr. Niemer beginning in November 2009. Oman argues that not all of these records were discussed by the ALJ and that they include findings such as a history of retinal vasculitis, fatigue and problems with sleep, poor or low energy, swollen tender points in Oman's wrist and hand, continuing memory problems, pain in her shoulder and leg, pain and swelling in her foot, worsening pain in her hand and foot that is affecting her daily activities, bilateral vision, and acute depression. Oman also points to records from Elms Digestive, Tidewater Neurology, Christian Counseling, and Lowcountry Internal Medicine, and argues that these records indicate Oman had abdominal pain, nausea, and diarrhea; reflect discontinuation of Actemra; reflect Oman was assessed with peripheral neuropathy, lumbar radiculopathy, insomnia, cerebral arteritis, depressive disorder, memory disturbance, and rheumatoid arthritis; indicate that Oman continued to have disruptive sleep and chronic sleep apnea even with the CPAP machine; reveal a diagnosis of major depressive disorder and reports of disruptive sleep and lots of pain; and reveal an assessment of memory loss. (Pl.'s Br. at 6-8, ECF No. 18 at 6-8.) Finally, Oman argues that the ALJ failed to acknowledge records from South Carolina Sports Medicine showing that Oman has Achilles tendonitis and that "while her condition may have improved since she is not working, she is still having pain at the Achilles tendon." (Pl.'s Br. at 8, ECF No. 8.)

The court has carefully considered Oman's argument; however, the court concludes that the ALJ gave appropriate reasons to discount Dr. Niemer's opinion, and Oman is essentially asking the court to reweigh the evidence. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"). Upon review of the ALJ's decision and the record, the court finds that



Oman has failed to demonstrate that the ALJ's decision to afford little weight to Dr. Niemer's opinion is unsupported by substantial evidence or based on an incorrect application of the law. See 20 C.F.R. § 404.1527(c); Mastro, 270 F.3d at 178 (stating that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight") (internal quotation marks and citation omitted); Dunn v. Colvin, 607 F. App'x 264, 267 (4th Cir. 2015) ("An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' . . . or has failed to give a sufficient reason for the weight afforded a particular opinion[.]") (internal citations omitted). The decision reflects that the ALJ weighed this opinion and reasonably found that the medical findings and observations in the record did not support it. Although Oman may be able to point to select medical records that arguably support the opinion, she has failed to demonstrate that the ALJ's findings are unsupported by substantial evidence. For example, although Oman directs the court to records indicating Oman's reports of pain, she has failed to direct the court to medical findings and treatment notes that would render the ALJ's evaluation of the disabling limitations opined by Dr. Niemer unsupported. The ALJ, as part of his duties in weighing the evidence, properly relied on medical records and treatment notes in determining that the limiting opinions of Dr. Niemer were unsupported and entitled to little weight. See Craig, 76 F.3d at 589; Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence). For all of these reasons, the court finds that Oman has not shown that the ALJ's decision to give little weight to Dr. Niemer's opinion evidence was unsupported by substantial evidence or reached through application of an incorrect legal standard.

B.  **SSR 96-8p**

Oman also argues that the ALJ failed to comply with the requirements of 96-8p in determining Oman's residual functional capacity, citing Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). See SSR 96-8p (requiring an ALJ to reference the evidence supporting his conclusions with respect to a claimant's residual functional capacity). Specifically, directing the court to the same evidence discussed in the previous section, Oman appears to argue that the ALJ failed to discuss all of Oman's medical records and failed to sufficiently analyze Dr. Niemer's opinion. The court disagrees. As discussed above, the court finds that Oman has failed to demonstrate that the ALJ's evaluation of Dr. Niemer's opinion was unsupported by substantial evidence or controlled by an error of law. Unlike Mascio, Oman has failed to show that the ALJ failed to properly address the evidence in assessing Oman's residual functional capacity. Cf. Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (holding that "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review") (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (*per curiam*)).

C.  **State Agency Physicians**

Oman next argues that the ALJ erred in giving greater weight to the opinions of the state agency physicians than to Oman's treating physician; however, the court finds that Oman has failed to demonstrate any error. Such opinions can constitute substantial evidence in support of an ALJ's decision over the opinion of an examining physician so long as the opinions from the non-examining physicians are consistent with the record as a whole. See Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir. 1986); Stanley v. Barnhart, 116 F. App'x 427, 429 (4th Cir. 2004) (disagreeing with the argument that the ALJ improperly gave more weight to residual functional capacity assessments of



non-examining state agency physicians over those of examining physicians and finding that the ALJ properly considered evidence provided by those physicians in context of other medical and vocational evidence); see also 20 C.F.R. § 404.1527(e)(2)(i) ("State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified . . . [and] are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider [their] findings and opinions as opinion evidence").

In this case, the ALJ observed that the state agency physicians concluded that Oman "was not disabled albeit using a different rationale." (Tr. 18.) The ALJ summarized the limitations opined by each examiner and further stated that he gave the opinions of the state agency examiners "significant weight" "as their opinions are well supported by the weight of the evidence of record, although I find the claimant's impairments to be more limiting than did [the state agency reviewers] and have reduced the residual functional capacity accordingly." (Tr. 19.) Oman appears to argue that the ALJ erred in weighing these opinions because the examiners did not have all of the records when they arrived at their opinions, and the ALJ failed to specifically state the areas in which the ALJ found Oman to be more impaired or the areas in which the residual functional capacity was reduced. However, based on the record before the ALJ and giving Oman the benefit of the doubt, the ALJ found that Oman's impairments were more limited than those opined by the state agency examiners, reducing Oman's capacity from a range of light work to a range of sedentary work. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2012) ("[B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it."); see also Geiger v. Astrue, No. 2:11CV00055, 2013 WL 317564 (W.D. Va. Jan. 27, 2013) ("The simple fact that [] opinions [with



different outcomes] came later in time than the state agency opinions does not mean that they should be accorded greater weight.").

D.   **Hypothetical Question**

Finally, Oman argues that the ALJ erred in failing to include additional limitations that Oman contends are supported by Dr. Niemer's opinion and the record in the hypothetical question submitted to the vocational expert. However, this argument appears to hinge on the allegations of error discussed in the above sections. In light of the court's finding that Oman failed to demonstrate any error in the ALJ's evaluation of the opinion evidence and in assessing Oman's residual functional capacity, Oman similarly has failed to demonstrate any error with regard to the hypothetical question.

## RECOMMENDATION

For the foregoing reasons, the court finds that Oman has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

June __, 2016                                          Paige J. Gossett
Columbia, South Carolina                               UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*